FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 MAR 31  PM 4:56

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| HENRITTA WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO.: CV-98-B-2437-S |
| ) | |
| WAL-MART STORES, INC., ) | |
| ) | |
| Defendant. ) | |

ENTERED

APR - 3 2000

### MEMORANDUM OPINION

This case is before the court on defendant's Motion For Summary Judgment. Plaintiff Henritta Wright ("plaintiff" or "Wright") filed this action against defendant Wal-Mart Stores, Inc. ("defendant" or "Wal-Mart") alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as breach of contract. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

### I. FACTS

Defendant employed plaintiff as a customer service manager in its Clanton, Alabama, store ("the store"). (Wright Dep. at 17-19, Ex. 1, attached as Ex. A to Def.'s Evid. Sub.) A customer service manager is an hourly supervisor who oversees other customer service managers, cashiers, and service desk employees. (*Id.* at 18-19, Ex. 1.) Defendant has policies against waiting on relatives, (Wright Dep. at Ex. 4 p. 16; Sorrels Dep. at 62, attached as Ex. B to Def.'s Evid. Sub.), and requiring that all gold jewelry refunds be handled by the jewelry department, (Sorrels Dep. at 68, Ex. 6; Veazey Dep. at 29, attached as Ex. C to Def.'s Evid. Sub.; Sorrels Aff. at Ex B., attached as Ex. F to Def.'s Evid. Sub.) Defendant also reserves the right to

57

immediately terminate employees for gross misconduct, including "Dishonesty/Compromised Integrity." (Wright Dep. at Ex. 4 p. 13.)

Sometime in February 1998, plaintiff's daughter, Tammy Davenport ("Davenport"), brought a gold-filled necklace to the service desk at the store and asked for a cash refund. (Wright Dep. at 36-41; Broockholdt Dep. at 28-29, attached as Ex. H. to Def.'s Evid. Sub.) She did not have a receipt. (*Id.*) According to Davenport's husband, he bought her the necklace as a Valentine's Day present at defendant's Pelham, Alabama, store, and did not keep the receipt. (J. Davenport Aff. ¶¶ 2-6, attached as Ex. 5 to Pl.'s Evid. Sub.) The jewelry department manager, Tami Veazey ("Veazey"), was working at the time the refund occurred. (Veazey Dep. at 8, attached as Ex. C. to Def.'s Evid. Sub.)

Brandy Broockholdt ("Broockholdt")[1] was the service desk employee at the time Davenport came in for the refund. (Broockholdt Dep. at 28, 34.) According to Broockholdt, plaintiff instructed her to give Davenport a refund. (*Id.*) Broockholdt noticed that the necklace had a non-Wal-Mart price tag, which plaintiff removed before handing the necklace to Broockholdt. (*Id.* at 29, 35.) According to Broockholdt, plaintiff then told Davenport to go to the jewelry department and get a correct bar code for the necklace. (*Id.* at 36.) According to Davenport, Broockholdt told her to get a bar code. (T. Davenport Aff. ¶¶ 11-12, attached as Ex. 4 to Pl.'s Evid. Sub.)

---

[1] Defendant spells the name as Brandi Boockholdt. (Def.'s Brief at 2.) Plaintiff refers to her as Brandy Boocholdt (Pl.'s Brief at 3, 13.) In her deposition, her name is spelled as Brandy Broockholdt. (Broockholdt Dep., attached as Ex. H to Def.'s Evid. Sub.) The court will spell the name as it appears in the deposition.

Davenport returned from the jewelry department with a bar code that was for a pair of earrings. (Broockholdt Dep. at 29, 37-38.) The bar code rang up a price of $49.97. (*Id.* at 29, 47.) According to Broockholdt, plaintiff told her to give Davenport $59.97 because that is what the necklace cost. (*Id.*) Broockholdt performed a price override, which plaintiff approved by putting her key in the register and turning it. (*Id.* at 39.) According to Broockholdt, she was intimidated by plaintiff, and performed the refund because she feared retaliation if she refused. (*Id.* at 42; Sorrels Dep. at 35-36; Sorrels Aff. ¶ 12.)

The next day, plaintiff approached jewelry department employee Cindy Bass ("Bass") and handed her a jewelry box with a necklace in it. (Bass Dep. at 7-8, attached as Ex. D to Def.'s Evid. Sub.) Bass told plaintiff that the necklace was not Wal-Mart merchandise and asked plaintiff where she got it. (*Id.* at 8; Veazey Dep. at Ex. 1.) Plaintiff stated that she did not know where it came from. (*Id.*) Bass took the necklace to Susan Hilyer ("Hilyer") a customer service manager in the jewelry department, who placed it in the department safe. (Bass dep. at 12-13; Hilyer Dep. at 10-11, attached as Ex. E to Def.'s Evid. Sub.)

When Veazy returned to work the next day, Bass and Hilyer told her about the necklace and about Bass's conversation with plaintiff. (Veazey Dep. at 9-10, Ex. 1.) Veazey asked cash office employees to find out who gave the refund. (*Id.* at 14.) The cash office employees informed Veazey that plaintiff had given the refund. (*Id.* at 8, 15.)

District loss prevention supervisor Danny Sorrels ("Sorrels")[2] conducted an investigation into the matter. He spoke with Broockholdt regarding the incident. (Sorrels Aff. ¶ 5.) He also

---

[2] Defendant, in its brief, spells the name Sorrels. In her brief, plaintiff spells it Sorrells. The deposition uses Sorrells. The affidavit uses Sorrels. The court will use Sorrels.

spoke with jewelry department employees, (*id.* at ¶ 14), including Veazey, (Sorrels Dep. at 40-41). On March 6, 1998, he met with plaintiff, who first denied and then, after being confronted with the receipt, admitted that she had approved a refund for her daughter. (Wright Dep. at 27; Sorrels Dep. at 37-38.) Plaintiff refused to provide a written statement giving her side of the incident. (Wright Dep. at 28; Sorrels Dep. at 46.) Sorrels terminated plaintiff for dishonesty and compromised integrity. (Sorrels Dep. at 12.) Broockholdt was not disciplined. (Sorrels Dep. at 36.) According to Sorrels, he found Broockholdt more credible than plaintiff. (Sorrels Dep. at 37; Sorrels Aff. ¶ 12.) At the time of her termination, plaintiff was 56 years old. (Wright Dep. at Ex. 2.)

## II. DISCUSSION

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**B.    ADEA Claim**

Claims of discrimination under the ADEA are governed by the familiar, tripartite framework established for Title VII cases by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802.

If the defendant succeeds in carrying this burden, then the plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives (*i.e.*, race discrimination or retaliation). *Burdine*, 450 U.S. at 253. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).

5

At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). In this case, defendant moves for summary judgment on the grounds that its actions were motivated by legitimate nondiscriminatory reasons.

### *1. Legitimate Nondiscriminatory Reasons*

Defendant argues that plaintiff was terminated for violating defendant's policies regarding dishonesty and compromised integrity and against checking out relatives. (Def.'s Brief at 8.) The evidence supports these proffered reasons. (*See, e.g.,* Sorrels Aff. ¶ 4.) Thus, defendant has met its burden to articulate a legitimate nondiscriminatory reason for the adverse employment action at issue.

### *2. Pretext*

Plaintiff contends that these proffered reasons are pretext for unlawful discrimination based on plaintiff's age. Once an employer produces legitimate, nondiscriminatory reasons, the plaintiff's ensuing "burden of proving [that the employer's proffered explanation is pretextual] merges with the plaintiff's ultimate burden of proving that [age] was a determining factor in [her] discharge, and it can be met by showing that a discriminating reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation." *Clark v. Coats & Clark, Inc.*, 990 F. 2d 1217, 1228 (11th Cir. 1993). Under the latter approach, plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence." *Combs*, 106 F. 3d at 1538.

In this case, plaintiff contends that (1) Sorrels's proffered reasons for plaintiff's termination are inconsistent and contradictory; (2) plaintiff did not violate defendant's policies; (3) defendant did not discipline Broockholdt, who was similarly situated to plaintiff; and (4) Sorrels did not conduct a reasonable investigation. (Pl.'s Brief at 12-18.) The court will address these contentions in turn.

### a. Inconsistent and contradictory reasons

Plaintiff contends that Sorrels "cannot seem to decide what it is that Plaintiff did wrong that justified her termination." (Pl.'s Brief at 12.) Plaintiff acknowledges the two policy violations discussed above, but then points to a series of hypothetical scenarios posed to Sorrels where Sorrels testified that he would have fired plaintiff under other varying circumstances. (Pl.'s Brief at 12-13.) The court cannot consider facts or circumstances that Sorrels did not rely on at the time of his decision, much less circumstances that exist only in hypothetical situations. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 n.3 (11th Cir. 1991) (holding that plaintiff cannot rely on matters not known to defendant when the decision was made). Consequently, the court is of the opinion that any inconsistency between defendant's proffered reasons and the hypothetical situations does not constitute sufficient evidence from which a reasonable jury could find that defendant's legitimate nondiscriminatory reasons were pretext for discrimination based on age.

Plaintiff also contends that Sorrels's deposition testimony to the effect that he decided to fire plaintiff only after meeting with her contradicts his affidavit testimony. The affidavit testimony reads: "Based on the information I received from [Brandy Broockholdt], a service desk employee, prior to talking to [Henritta] Wright about this matter, the decision was made to

7

terminate Wright." (Sorrels Aff. ¶ 5.) The point made by the affidavit testimony is that Sorrels talked to Broockholdt before he talked to plaintiff, and that he used the information in his decision to terminate plaintiff. The fact remains that plaintiff was not terminated until after Sorrels met with her and other members of Wal-Mart management. (Sorrels Dep. at 11.) Consequently, the inconsistency, if any, between Sorrels's affidavit and deposition testimony does not constitute sufficient evidence from which a reasonable jury could find that defendant's legitimate nondiscriminatory reasons were pretext for discrimination based on age.

### b. Policy violations

Plaintiff contends that she did not violate company policy. First, plaintiff argues that the policy regarding relatives does not prohibit her from approving refunds for relatives. The policy instead reads: "Checking out relatives or yourself at the cash registers is not permitted." (Wright Dep. at Ex. 4, p. 16.) Second, plaintiff argues that even if she violated the policy regarding jewelry refunds, it was not gross misconduct warranting immediate termination. (Pl.'s Brief at 15.)

Even taking plaintiff's policy interpretations at face value, there is insufficient evidence to show pretext. Plaintiff was terminated for dishonesty and compromised integrity, in violation of defendant's policy against gross misconduct. (Sorrels Dep. at 12; Wright Dep. at Ex. 4 p. 13.) According to Brookholdt, plaintiff had apparently approved the return of non-Wal-Mart merchandise under circumstances suggesting that plaintiff knew it was not Wal-Mart merchandise. (Broockholdt Dep. at 28-29, 34-35.) According to Bass, when plaintiff took the necklace to the jewelry department, plaintiff denied knowing where it came from. (*Id.*) When Veazy returned to work the next day, Bass told her about the necklace and about Bass's

8

conversation with plaintiff. (Veazey Dep. at Ex. 1.) Sorrels spoke with Broockholdt regarding the incident, (Sorrels Aff. ¶ 5), as well as jewelry department employees, (*id.* at ¶ 14), including Veazey, (Sorrels Dep. at 40-41). Finally, when Sorrels met with plaintiff, she initially denied approving a refund for her daughter. (Wright Dep. at 28; Sorrels Dep. at 37-38.) Only after being confronted with the receipt did she admit her actions. (*Id.*)

This evidence establishes defendant's legitimate discriminatory reason that Sorrels terminated plaintiff for gross misconduct of dishonest and compromised integrity. The court is of the opinion that the evidence plaintiff offers that she did not commit other policy violations is not sufficient evidence from which a reasonable jury could find that defendant's legitimate nondiscriminatory reason was pretext for discrimination based on age.

  <u>c.</u>  **<u>Broockholdt</u>**

Plaintiff contends that because Broockholdt was not disciplined for similar policy violations, defendant's proffered reasons are pretext for discrimination. The court disagrees. Broockholdt was not a supervisor who authorized a relative's transaction. She did not deny involvement in a transaction in which she was involved. Instead, she was following orders from a supervisor. Thus, she cannot be considered a proper comparator. *See Jones v. Gerwens*, 874 F.2d 1534, 1539-40 (11th Cir.1989) (holding that the most important factors for comparators "in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed"). The treatment of Broockholdt is not sufficient evidence from which a reasonable jury could find that the proffered legitimate nondiscriminatory reasons for plaintiff's termination were pretext for discrimination based on age.

### d. Sorrels's Investigation

Finally, plaintiff argues that Sorrels's investigation was unreasonable and, therefore, was pretext for discrimination based on age. The court disagrees. As noted, Sorrels interviewed Broockholdt, Veasey, other jewelry department employees, and finally plaintiff before terminating plaintiff. During the investigation, Broockholdt's account of the transaction was buttressed by statements from jewelry department employees. Finally, plaintiff herself denied the transaction ever occurred. The evidence offered by plaintiff regarding the reasonableness of Sorrels's investigation is not sufficient evidence from which a reasonable jury could find that the proffered legitimate nondiscriminatory reasons for plaintiff's termination were pretext for discrimination based on age.

### e. Conclusion

Plaintiff's evidence, taken separately or collectively, is insufficient evidence on which a reasonable fact finder could conclude that defendant's proffered reasons for terminating plaintiff are pretext for unlawful discrimination based on plaintiff's age.

### C. Breach of Contract

Defendant moves for summary judgment on plaintiff's breach of contract claim based on a stipulation by plaintiff's counsel that plaintiff was dropping the claim. (Def.'s Brief at 1 n.1; Wright Dep. at 120.) In opposition, plaintiff makes no mention of the claim. (*See* Pl.'s Brief.) Further, the court has found no evidence supporting such a claim. Consequently, based on the stipulation, lack of opposition, and lack of evidence, the court is of the opinion that summary judgment is due to be granted on plaintiff's breach of contract claim.

## III. CONCLUSION

Based on the foregoing, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 31st day of March, 2000.

*[signature: Sharon Lovelace Blackburn]*

**SHARON LOVELACE BLACKBURN**
United States District Judge